IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CONSTANCE LOEWE, Individually ) and as Special Administrator of the ) Estate of THOMAS JOSEPH ) LOEWE, Deceased; JILLIAN ) WILLIAMS; AYANA LOEWE, ) ) Plaintiffs, ) ) vs. ) ) CITY AND COUNTY OF ) HONOLULU; HONOLULU ) POLICE DEPARTMENT; JOHN ) DOES 1–50, JANE DOES 1–50, ) DOE DEFENDANTS 1–50, ) ) Defendants. ) _____ ) | CV. NO. 10-00368 DAE-KSC |

ORDER: (1) GRANTING IN PART CITY DEFENDANTS' MOTION TO
DISMISS COMPLAINT; AND (2) DISMISSING WITHOUT PREJUDICE THE
COMPLAINT AS AGAINST ALL DEFENDANTS

On November 1, 2010, the Court heard City Defendants' Motion to

Dismiss.  Te-Hina Te-Moana Ickes, Esq., appeared at the hearing on behalf of

Plaintiffs Constance Loewe, Estate of Thomas Joseph Loewe, Jillian Williams, and

Ayana Loewe (collectively, "Plaintiffs"); Tracy S. Fukui, Esq., appeared at the

hearing on behalf of Defendants City and County of Honolulu and Honolulu Police

Department (collectively, "City Defendants").  After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS IN PART City Defendants' Motion to Dismiss Complaint.  The Complaint is DISMISSED WITHOUT PREJUDICE as against all Defendants.

BACKGROUND

On March 19, 2010, Plaintiffs Constance Loewe, Estate of Thomas Joseph Loewe,[1] Jillian Williams, and Ayana Loewe (collectively, "Plaintiffs") filed a complaint in Hawaii state court against Defendants City and County of Honolulu, Honolulu Police Department, John Does 1–50, Jane Does 1–50, and Does 1–50 (collectively, "Defendants").[2]  ("Compl.," Doc. # 1 Ex. A.)  Specifically, Plaintiffs'

---

[1] The Estate of Thomas Joseph Loewe is represented by Constance Loewe, as Special Administrator.

[2] The Hawaii state action is captioned Loewe et al. v. City and County of Honolulu et al., Circuit Court for the First Circuit of Hawaii, Civil No. 10-1-0587-03.  In their briefing, the parties cite inconsistent dates for when Plaintiffs filed their Complaint in state court.  Defendants City and County of Honolulu and Honolulu Police Department ("City Defendants") state in their Notice of Removal that Plaintiffs filed the Complaint on March 19, 2010.  ("Removal Not." ¶ 1, Doc. #1.)  However, in their Motion to Dismiss ("Motion"), City Defendants declare that Plaintiffs filed their Complaint on June 23, 2010.  ("Mot." at 1, Doc. # 5.)  In their Opposition to the Motion ("Opposition"), Plaintiffs state that they filed their Complaint on May 19, 2010.  ("Opp'n" at 2, Doc. # 10.)  The Court resolves this inconsistency by looking to the Complaint itself, which is dated March 19, 2010.  Therefore, for purposes of this Motion, the Court will presume that Plaintiffs filed their Complaint on March 19, 2010.

Complaint alleges Counts: (Count I) failure to train or supervise (id. ¶¶ 16–18); (Count II) negligent hiring, training, and/or supervision (id. ¶¶ 19–21); (Count III) failure to discipline, train, or direct employees concerning the rights of citizens (id. ¶¶ 22–24); (Count III) breach of the duty to exercise reasonable care in the conduct of police work (id. ¶¶ 25–26);[3] (Count IV) intentional infliction of emotional distress and negligent infliction of emotional distress (id. ¶¶ 27–29); (Count V) assault (id. ¶¶ 30–31); (Count VI) battery (id. ¶¶ 32–33); (Count VII) wrongful death (id. ¶¶ 34–36); (Count VIII) loss of consortium (id. ¶¶ 37–39);[4] (Count IX) joint and several liability for all injuries that Plaintiffs sustained (id. ¶¶ 40–41); (Count X) violation of Thomas Joseph Loewe's ("Decedent") rights to life, liberty, and freedom from unreasonable seizures, brought pursuant to 42 U.S.C. § 1983 (id. ¶¶ 42–43); and (Count X) punitive damages (id. ¶¶ 44–45).[5]

Plaintiffs assert that they suffered injuries and damages from a March 19, 2008 incident, wherein officers from the Honolulu Police Department allegedly

---

[3] In the Complaint, Plaintiffs refer to both this Count and the previous Count as Count III.

[4] Plaintiffs assert this Count only on behalf of Plaintiff Constance Loewe.

[5] As with Count III, in the Complaint, Plaintiffs refer to both this Count and the previous Count as Count X.

shot Decedent seven times, killing him.[6]  (Id. ¶¶ 10, 13.)  The incident occurred

during an operation in Pearlridge involving the HPD District 3 Crime Reduction

Unit, which Plaintiffs claim targeted individuals suspected of unauthorized entry

into motor vehicles.  (Id. ¶ 10.)  According to Plaintiffs, the officers identified

Decedent as a suspect and subsequently shot and killed him.  (Id. ¶¶ 12–13.)

Plaintiffs Constance Loewe, Jillian Williams, and Ayana Loewe are all members of

Decedent's immediate family.[7]  (Id. ¶¶ 1, 3–4.)

_____

[6] Plaintiffs' Complaint and Opposition as well as City Defendants' Notice of Removal and Motion all provide that the incident occurred on March 19, 2010. (See Compl. ¶ 10; Opp'n at 6; Removal Not. ¶ 2; Mot. at 2.)  However, Decedent's death certificate and autopsy report both indicate that Decedent passed away on March 19, 2008, meaning that the incident occurred on that date.  (Opp'n. Exs. A, B.)  Plaintiffs clarified during the hearing that the incident did in fact occur on March 19, 2008.

Plaintiffs submitted copies of Decedent's death certificate and autopsy report as Exhibits A and B respectively to their Opposition.  "[A] district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  Parrino v. FHP, Inc., 146 F.3d 699, 705 (9th Cir. 1998) (quoting Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)); see also Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001).  In the instant case, Plaintiffs' entire Complaint revolves around the manner and circumstances of Decedent's death.  Decedent's death certificate and autopsy report are both clearly essential to the Complaint, and neither party disputes their authenticity.  Accordingly, it is appropriate for the Court to consider the death certificate and autopsy report when ruling on City Defendants' Motion to Dismiss.

[7] Specifically, Plaintiff Constance Loewe is Decedent's widow.  (Compl. ¶ 1.)  Plaintiffs Jillian Williams and Ayana Loewe are Decedent's daughters.  (Id. ¶¶ 3–4.)

4

On July 1, 2010, City Defendants filed in this Court a Notice of

Removal of Civil Action pursuant to 28 U.S.C. § 1441(c).[8]  ("Removal Not.," Doc.

#1.)  On July 13, 2010, City Defendants filed the instant Motion to Dismiss

("Motion") for failure to state a claim upon which relief can be granted.  ("Mot.,"

Doc. # 5.)  On September 27, 2010, Plaintiffs filed an Opposition to the Motion.

("Opp'n," Doc. # 10.)  On October 1, 2010, City Defendants filed a Reply.

("Reply," Doc. # 11.)

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a

claim upon which relief can be granted.  Review is limited to the contents of the

complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir.

1994).  A complaint may be dismissed as a matter of law for one of two reasons:

"(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable

legal claim."  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.

---

[8] In their briefing, City Defendants variously state that they filed the Notice
of Removal on July 6, 2010 and July 7, 2010.  (Mot. at 2.)  Plaintiffs provide that
City Defendants filed the Notice of Removal on July 7, 2010.  (Opp'n at 2.)  As
above, the Court resolves this inconsistency by looking to the Notice of Removal
itself, which is dated July 1, 2010.  Therefore, for purposes of this Motion, the
Court will presume that City Defendants filed their Notice of Removal on July 1,
2010.

1984) (citation omitted).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).  Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.  See Twombly, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief.  Id. at 586. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. at 558 (citation omitted).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

## DISCUSSION

For the reasons set forth below, the Court concludes that Plaintiffs' Section 1983 claim should be dismissed pursuant to Rule 12(b)(6).  Because the Section 1983 claim conferred subject matter jurisdiction on this Court, the Court dismisses Plaintiffs' state law claims as well.

I.      <u>Violation of Rights Under 42 U.S.C. § 1983</u>

Section 1983 of Title 42 of the U.S. Code states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 978 (9th Cir. 2004) (quoting <u>Henderson v. City of Simi Valley</u>, 305 F.3d 1052, 1056 (9th Cir. 2002)) (quotations omitted).  To state a claim under Section 1983, "'a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'"  <u>Jensen v. City of Oxnard</u>, 145 F.3d 1078, 1082 (9th Cir. 1998) (quoting <u>Wood v. Ostrander</u>, 879 F.2d 583, 587 (9th Cir. 1989)).

In the instant case, City Defendants contend that Plaintiffs failed to allege sufficient facts to show either municipal liability or a violation of Decedent's constitutional rights.  (Mot. at 13–14.)  The Court will address these arguments in turn.

8

A.      Municipal Liability

A plaintiff may not assert a claim under Section 1983 merely by identifying conduct properly attributable to the municipality.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).  "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Id.

1.      Municipal Policy or Custom

"[M]unicipalities may be held liable as 'persons' under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"  Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)).  "A plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted

9

official policy; or (3) an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'" Id. (quoting Ulrich v. City & County of S.F., 308 F.3d 968, 984–85 (9th Cir. 2002)).

        A plaintiff may therefore establish municipal liability by proving that the alleged constitutional violation was committed pursuant to a formal policy or custom that constitutes the standard operating procedure; that an official with "final policy-making authority"[9] committed the constitutional tort; or "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992); see Monell, 436 U.S. at 690–91. "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." Okla. City v. Tuttle, 471 U.S. 808, 823 (1985). The word custom recognizes situations where the practices of officials are permanent and well settled. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 167–68 (1970). Allegations of random acts, or single instances of misconduct, are insufficient to establish a municipal custom. See Navarro v. Block, 72 F.3d 712, 714–15 (9th Cir. 1996); Thompson v. City of L.A., 885 F.2d 1439, 1443–44 (9th Cir. 1989).

---

        [9] "Whether a particular official has final policy-making authority is a question of state law." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992).

In the instant case, Plaintiffs' Complaint alleges that City Defendants "have engaged in a police [sic], practice and/or custom of using excessive force against citizens of the City and County of Honolulu which policy, practice and/or custom predated the deadly assault on [Decedent]." (Compl. ¶ 14.) However, Plaintiffs utterly fail to provide any facts describing the alleged policy or custom, how it was deficient, and how it caused injury to Decedent.[10]

Plaintiffs appear to argue in their Opposition that City Defendants can be held liable under a theory of respondeat superior. (See Opp'n at 17–20.) Even if the officers, at their own discretion, violated Decedent's constitutional rights, City Defendants would not be liable for those actions. "The cases make clear that the unconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under [S]ection 1983." Gillette, 979 F.2d at 1347 (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988) (observing that "[i]f the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability")); see also Monell, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.").

---

[10]  Plaintiffs also fail to allege that an employee with final policymaking authority committed the constitutional tort or ratified the unconstitutional actions of a subordinate such that liability can attach to City Defendants.

Plaintiffs' allegations regarding municipal liability consist of little more than bare legal conclusions, which are insufficient to survive a motion to dismiss.  See Iqbal, 129 S. Ct. at 1949.  Accordingly, Plaintiffs fail to state a claim for municipal liability on the basis of a municipal policy or custom.

2.   Failure to Train

In Counts 1, 2, and 3 of their Complaint, Plaintiffs allege failure to train or supervise; negligent hiring, training, and/or supervision; and failure to discipline, train, or direct employees concerning the rights of citizens.  (See Compl. ¶¶ 16–24.)  Although it appears that Plaintiffs intended these assertions to support state law claims for negligence and "negligent hiring, training and/or supervision,"[11] the Court will also construe these allegations as a federal claim for failure to train.

Under certain circumstances, failure to train may create municipal liability.  See City of Canton v. Harris, 489 U.S. 378, 388 (1989); Price, 513 F.3d at 973.  Deficient police training creates Section 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons" the

---

[11] In their Opposition, Plaintiffs discuss their "negligent hiring, training and/or supervision" claim in connection with their state law claim for negligence. (Opp'n at 9–12.)  Additionally, although Plaintiffs are represented by counsel, they cite to no authority and provide no facts or argument to support municipal liability on the basis of failure to train.

police have contact with.  <u>City of Canton</u>, 489 U.S. at 388.  Deliberate indifference

may be found where a training program is obviously deficient, and the inadequacy

of the program is likely to result in the violation of citizens' constitutional rights.

<u>Id.</u> at 390; <u>see also</u> <u>Bd. of County Comm'rs</u>, 520 U.S. at 410 ("'[D]eliberate

indifference' is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action.").  Additionally, "the

identified deficiency in a city's training program must be closely related to the

ultimate injury."  <u>Id.</u> at 391.  These high standards of fault and causation are

necessary to protect judicial efficiency and to avoid creating "de facto respondeat

superior liability on municipalities."  <u>Id.</u> at 391–92.

Plaintiffs allege that City Defendants "failed to train or supervise

[their] personnel, employees, agents, and/or representatives" and that such failure

to train was the result of "deliberate indifference."  (Compl. ¶ 17.)  However,

Plaintiffs' Complaint is completely devoid of any facts to support their failure to

train claim.  (<u>See</u> <u>id.</u> ¶¶ 16–24.)  Plaintiffs do not identify any training program,

much less a deficient training program, that would likely result in the violation of

Decedent's constitutional rights.  Moreover, Plaintiffs' contention that City

Defendants' failure to train amounted to deliberate indifference is a legal

conclusion not entitled to the presumption of truth.  See Iqbal, 129 S. Ct. at 1949.

Accordingly, Plaintiffs fail to state a claim for failure to train under Section 1983.

> B.   Deprivation of Constitutional Rights

City Defendants also argue that Plaintiffs fail to allege sufficient facts

to show a violation of Decedent's constitutional rights.  (Mot. at 13.)  The only

constitutional violation that Plaintiffs specifically allege is the right to "freedom

from unreasonable seizures."  (Compl. ¶ 43.)  Plaintiffs assert elsewhere in the

Complaint that Defendants used excessive force against Decedent.  (Id. ¶¶ 13–14.)

Allegations of excessive force are examined under the Fourth

Amendment's prohibition on unreasonable seizures.  Graham v. Connor, 490 U.S.

386, 394 (1989).  A seizure is a "governmental termination of freedom of

movement through means intentionally applied."  Brower v. County of Inyo, 489

U.S. 593, 597 (1989); see also Tennessee v. Garner, 471 U.S. 1, 7 (1985)

("Whenever an officer restrains the freedom of a person to walk away, he has

seized that person.").  "'Seizure' alone is not enough for § 1983 liability; the

seizure must be 'unreasonable.'"  Brower, 489 U.S. at 599.  "Determining whether

the force used to effect a particular seizure is 'reasonable' under the Fourth

Amendment requires a careful balancing of 'the nature and quality of the intrusion

on the individual's Fourth Amendment interests' against the countervailing

government interests at stake." Graham, 490 U.S. at 396 (quoting Garner, 471

U.S. at 80). "[T]he question is whether the officers' actions are 'objectively

reasonable' in light of the facts and circumstances confronting them." Id. at 397.

In determining reasonableness, a court must (1) assess the severity of the intrusion

on the individual's Fourth Amendment rights by evaluating the type and amount of

force inflicted; (2) evaluate the government's interest by assessing the severity of

the crime, whether the suspect posed an immediate threat to the officers' or

public's safety, and whether the suspect was resisting arrest or attempting to

escape; and (3) balance the gravity of the intrusion on the individual against the

government's need for that intrusion. Espinosa v. City & County of S.F., 598 F.3d

528, 537 (9th Cir. 2010) (citations omitted); see also Miller v. Clark County, 340

F.3d 959, 964 (9th Cir. 2003). Additionally, the "reasonableness" of a particular

use of force must be evaluated from the perspective of a "reasonable officer on the

scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

Plaintiffs' Complaint provides sparse facts regarding the incident at

issue. Plaintiffs merely state that "[u]nidentified HPD officers shot [Decedent]

seven times at point blank range, killing him" and that "[t]his use of force was

excessive and unjustified." (Compl. ¶ 13.) This alone is not sufficient to state a

plausible claim for violation of rights under Section 1983. For example, Plaintiffs

fail to allege any facts describing the conduct of the officers or Decedent immediately before or after the incident.  Such lack of factual allegations leaves this Court to speculate about the circumstances of the incident and whether Decedent posed an immediate threat to the safety of the officers or others. Furthermore, Plaintiffs' allegation that the use of force was "excessive and unjustified" is a legal conclusion, not entitled to the presumption of truth.  See Iqbal, 129 S. Ct. at 1949.

Plaintiffs attempt to bolster their Complaint by arguing, based on the autopsy report, that the officers shot Decedent twice in the back.[12]  (Opp'n at 19–20.)  Even considering this allegation, Plaintiffs still fall short of making it plausible that City Defendants acted wrongfully because they do not explain the circumstances surrounding the incident.

In sum, Plaintiffs have failed to allege sufficient facts to raise an inference either that City Defendants are "persons" within the meaning of Section 1983 or that City Defendants violated Decedent's constitutional rights. Accordingly, the Court GRANTS City Defendants' Motion to Dismiss as to Plaintiffs' Section 1983 claim.

---

[12] The Court found supra that the autopsy report should be incorporated into the Complaint.

16

II.   State Law Claims

Plaintiffs assert a number of state law claims against Defendants including the following: wrongful death; negligent hiring, training, and/or supervision;[13] negligence; intentional infliction of emotional distress; negligent infliction of emotional distress; assault; battery; and loss of consortium.  City Defendants removed Plaintiffs' suit to this Court on the basis of a federal question, namely Plaintiffs' Section 1983 claim.  Pleading state claims does not confer jurisdiction on this Court.  The Court may exercise supplemental jurisdiction over the state claims only after Plaintiffs have established federal jurisdiction by properly pleading their federal claim.  Because the Court has granted City Defendants' Motion to Dismiss as to Plaintiffs' Section 1983 claim, the Court declines to reach Plaintiffs' state law claims.  Accordingly, the Court DISMISSES Plaintiffs' state law claims as well.

III.   Request for Leave to Amend

Plaintiffs request leave to amend "[s]hould the Court find merit in any of [City] Defendants' arguments."  (See Opp'n at 21–22.)  The Court recognizes that it may be possible for Plaintiffs to state a claim if provided the opportunity to

_____

[13] The Court construes this claim as alleging a cause of action under both state and federal law.

17

amend their Complaint.[14]  Accordingly, the Complaint is DISMISSED WITHOUT PREJUDICE as against all Defendants in this action, with leave to amend no later than 30 days from the filing of this Order.[15]

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART City Defendants' Motion to Dismiss (Doc. # 5) and DISMISSES WITHOUT PREJUDICE the Complaint as against all Defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 3, 2010.



_____
David Alan Ezra
United States District Judge

Loewe et al. v. City and County of Honolulu et al., Cv. No. 10-00368 DAE-KSC; ORDER: (1) GRANTING IN PART CITY DEFENDANTS' MOTION TO DISMISS COMPLAINT; AND (2) DISMISSING WITHOUT PREJUDICE THE COMPLAINT AS AGAINST ALL DEFENDANTS

---

[14] Plaintiffs originally filed the Complaint in Hawaii State Court, which may not have put them on notice that they would be required to meet federal pleading standards.  (See Opp'n at 5.)

[15] In light of its determination herein, the Court declines to address City Defendants' contention that all claims against the Doe Defendants and Defendant Hawaii Police Department should be dismissed.  (See Mot. at 15–17.)